FILED
United States Court of Appeals
Tenth Circuit

January 7, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MICHAEL SANCHEZ,

    Plaintiff - Appellant,

v.

TRAVELERS INDEMNITY COMPANY,

    Defendant - Appellee.

No. 24-1009
(D.C. No. 1:19-CV-01307-DDD-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Issue preclusion ensures parties get only one bite at the apple when litigating their claims. Parties cannot relitigate an issue settled in a prior lawsuit even if the underlying claims are distinct. This principle extends to issues first raised in state administrative hearings.

Michael Sanchez injured his back while employed at Denver Water. He sought workers' compensation benefits, and Denver Water's insurer, Travelers Indemnity Company, initially granted benefits as a work-related injury. Travelers later reversed that decision after receiving conflicting doctors' diagnoses. Sanchez

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

challenged the denial administratively under Colorado workers' compensation law, but an administrative judge sided with Travelers. After appealing unsuccessfully, Sanchez brought this suit alleging that Travelers acted in bad faith by denying his claim and litigating his appeal. The district court granted Travelers summary judgment on this claim because Sanchez litigated its underlying issues during his administrative appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Plaintiff Michael Sanchez worked for Denver Water as an emergency-services employee. He reported a work injury to his employer, which immediately sent him to its clinic to diagnose the injury. Plaintiff claimed he injured his lower back "while obtaining a 50–60-pound drill from his Denver Water truck to repair a water leak." Denver Water's doctor documented, however, that Plaintiff initially described pain only in his mid back. Denver Water at first informed its insurer, Defendant Travelers Insurance Company, that Plaintiff's injury was a work-related injury to his lower back. After Plaintiff went to physical therapy at Denver Water's insistence, however, Denver Water reevaluated its opinion. The physical therapist agreed with Denver Water's doctor that Plaintiff injured only his mid back and not his lower back.

Plaintiff sought a second opinion from another doctor. This doctor initially also found that Plaintiff suffered only a mid-back injury. Plaintiff alleges, however, that Defendant sent the second doctor only partial and misleading records that skewed his initial diagnosis. The second doctor found Plaintiff injured his lower back after a full review of medical records. Despite this, Defendant reclassified

2

Plaintiff as having a mid-back injury and denied coverage for his alleged lower-back injury. Plaintiff disputed the change and got several other doctors to support his claims.

Plaintiff sought a worker's compensation hearing in the Colorado Office of Administrative Courts, which scheduled a trial. He also petitioned for a Colorado Division of Workers' Compensation independent medical examination ("DIME"). DIME's findings "concerning [maximum medical improvement] and permanent medical impairment [have] presumptive effect," and adverse parties can overcome them only with clear and convincing evidence. Leprino Foods Co. v. Indus. Claim Appeals Off., 134 P.3d 475, 482 (Colo.App. 2005). The parties agreed, however, to hold the DIME in abeyance during the ALJ trial and subsequent appeals to the Colorado Industrial Claim Appeals Office, the Colorado Court of Appeals, and the Colorado Supreme Court.

The administrative law judge ("ALJ") ruled for Defendant, holding that Plaintiff "failed to establish by a preponderance of the evidence that, in addition to suffering an admitted mid-back injury, he also suffered a lower back injury" because his first doctor found no such injury in multiple examinations. The ALJ also focused on the fact that the second doctor supported Plaintiff's lower-back-injury claims only in his second report, and that Plaintiff had initially not claimed lower-back pain. Plaintiff claims that Defendant withheld records from the ALJ that showed he had initially reported lower-back pain.

3

Plaintiff appealed to Colorado's Industrial Claim Appeals Office. The Appeals Office acknowledged that the ALJ had not admitted into evidence the fact that a second doctor later disagreed with his own initial assessment that Plaintiff's injuries were to his mid back, but nevertheless affirmed because "substantial evidence" supported the ALJ's underlying determinations. Plaintiff then appealed to the Colorado Court of Appeals, which affirmed for the same reason. The Colorado Supreme Court denied his petition for a writ of certiorari.

Only after all these appeals ended adversely to Plaintiff did he get a DIME. The initial DIME favored Defendant, but the ALJ struck it because Defendant admitted that it destroyed relevant records months prior. A second DIME favored Plaintiff. The ALJ's ruling remained, however, and Defendant denied Plaintiff coverage on that basis.

Plaintiff sued Defendant in the District of Colorado for denying his claim in bad faith. He alleged Defendant

> breached the duty of good faith and fair dealing owed to [Plaintiff] by improperly and unlawfully reclassifying [his] injury from work-related to non-work related, fail[ed] to properly investigate threats by Denver Water's agents of job loss if [Plaintiff] was given any restriction, fail[ed] to provide complete medical records to treatment providers evaluating [Plaintiff]'s injury, conceal[ed] records that support [Plaintiff]'s injury as work related, falsely claim[ed] that [Plaintiff] had retired and had received surgery for his injury, refusing to compensate [Plaintiff] for his impairment rating, and other acts designed to withhold/delay/deny benefits and/or to unlawfully circumvent Colorado's regulatory and statutory workers' compensation procedures.

App'x Vol. 1 at 91–92. Defendant moved for summary judgment, arguing that issue preclusion barred Plaintiff's claim because the ALJ and various Colorado courts had

4

ruled against him on an issue essential to his claim: whether Defendant properly denied coverage. The district court agreed and granted Defendant summary judgment.

We review a district court's summary judgment ruling de novo. Utah Animal Rts. Coal. v. Salt Lake Cnty., 566 F.3d 1236, 1242 (10th Cir. 2009). We grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In so doing, we "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (quoting Simms v. Okla. Ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999)).

## II.

The district court granted Defendant summary judgment because under Colorado law a "bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." Hall v. Allstate Fire & Cas. Ins. Co., 20 F.4th 1319, 1325 (10th Cir. 2021) (quoting MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co., 558 F.3d 1184, 1193 (10th Cir. 2009)). Because the parties already litigated whether Defendant properly denied Plaintiff coverage before the ALJ, Plaintiff could not do so again under the bad-faith claim's guise. The district court concluded that this principle applied even though Plaintiff argued that Defendant's medical-record withholding and destruction rendered the ALJ's trial and the subsequent appeals process unfair and inadequate,

5

for he "had the opportunity to present his arguments about the fairness of the proceedings and the ALJ's evidentiary rulings to the Colorado Court of Appeals and the Colorado Supreme Court."

Plaintiff argues the district court erred for three reasons. First, he contends that the DIME in his favor mooted the ALJ's ruling for Defendant because DIMEs have presumptive effect under Colorado law and Defendant never presented clear and convincing evidence that contradicted the DIME's findings. Second, he argues that bad-faith claims do not require litigating whether Defendant properly denied Plaintiff coverage. Third, he contends that the district court violated public policy by not allowing him to bring bad-faith claims even if he litigated them before. "Granting insurance companies immunity against bad-faith claims so long as they prevail at some stage of the claim process," Plaintiff argues, "will perversely incentivize insurance companies to employ 'win at all costs' tactics in the claims handling process—win the claim and the insurance company is immune from bad faith claims; but lose the claim and the insurance company is subject to bad faith claims."

Only one of these arguments is properly before us. We "do[] not consider an issue not passed upon below," Singleton v. Wulff, 428 U.S. 106, 120 (1976), and "when a litigant fails to raise a particular argument below, we typically treat that argument as forfeited," United States v. Johnson, 732 F. App'x 638, 643 (10th Cir. 2018) (citing Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011)). Although Plaintiff argued the DIME determination that he suffered a work-related lower-back injury controlled over the ALJ's contrary decision below, he did so only

in a footnote. Appellants waive arguments perfunctorily made only in footnotes.[1] Bradford v. U.S. Dep't of Lab., 101 F.4th 707, 717 n.2 (10th Cir. 2024) (citing United States v. Hardman, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc)). And Plaintiff forfeited his public policy argument when he did not make it below.

That leaves only Plaintiff's argument that the ALJ's determination on his workers'-compensation claim does not preclude litigating his bad-faith claim because the two are separate claims as a matter of law. He emphasizes that "the tort of bad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim," and that "a reasonable juror could find that Travelers breached its duty of good faith and fair dealing in failing to properly and fairly investigate and/or handle Sanchez's workers' compensation claim." He seeks "emotional distress; pain and suffering, inconvenience; fear and anxiety and impairment of [his] quality of life" for both strains of Defendant's conduct.

This argument fails under our established precedent. As the district court explained, we have interpreted Colorado law to foreclose bad-faith claims "if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." Hall, 20 F.4th at 1325 (quoting MarkWest Hydrocarbon, 558 F.3d at 1193). In other words, Plaintiff must prove Defendant improperly denied coverage to bring a bad-faith claim based only on damages from that improper denial. Plaintiff's argument that bad-faith and unreasonable workers'-compensation denial

---

[1] Contrary to Plaintiff's argument the district court did not rule on this issue in its summary judgment order.

are distinct legal claims does not, therefore, answer the more pertinent legal question: whether his claimed damages flow exclusively from Defendant's coverage denial. Plaintiff has no argument directly responsive to this concern.

And Plaintiff's complaint suggests that all his claimed damages come from Defendant's coverage denial. The "emotional distress; pain and suffering, inconvenience; fear and anxiety and impairment of [his] quality of life" he claims all resulted from "acts designed to withhold/delay/deny benefits and/or to unlawfully circumvent Colorado's regulatory and statutory workers' compensation procedures." Even if Defendant's bad-faith acts were all related to the workers' compensation appeal process rather than the underlying claim itself, the damages flowed from how those process issues affected the underlying insurance denial. For that reason, Plaintiff must prove that Defendant improperly denied that coverage.

Plaintiff cannot do so because he already litigated that claim in his workers'-compensation denial trial and subsequent appeals. Issue preclusion prevents relitigating a previous case's elements if:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Bushco v. Shurtleff, 729 F.3d 1294, 1401 (10th Cir. 2013) (quoting Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr., 378 F.3d 1132, 1136 (10th Cir. 2004)). The insurance-denial issue meets all four elements. The ALJ trial and Plaintiff's appeals focused on whether

Defendant properly denied coverage, Plaintiff lost that trial on the merits and pursued all available appeals, he litigated the claim against Defendant during both the trial and the appeal, and Plaintiff had many opportunities during both to litigate the issue to its fullest extent.  Proceedings are full and fair if no reason exists "to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."[2]  Montana v. United States, 440 U.S. 147, 164 n.11 (1979).  Plaintiff argued that the ALJ trial had both procedural and substantive faults, but he litigated all these concerns before the internal administrative appeals board, the Colorado Court of Appeals, and the Colorado Supreme Court.  That the courts and administrative organs upheld Defendant's conduct through so many appeals confirms that Plaintiff had a full and fair opportunity to litigate the issue.  Because our precedent precludes relitigating whether Defendant denied coverage properly, an essential feature of Plaintiff's bad-faith claim, he cannot recover as a matter of law.[3]

---

[2] Administrative hearings and trials have the same preclusive effect as a court if "the agency (1) acts in a judicial capacity; (2) resolves factual disputes properly before it; and (3) the parties had 'an adequate opportunity to litigate' the issue(s)."  Salguero v. City of Clovis, 366 F.3d 1168, 1173 (10th Cir. 2004) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)).  The ALJ trial meets all three elements, specifically framing itself as an acting with procedures consistent with a traditional trial before a judge.

[3] On May 14, 2024, Defendant filed a Motion to File Corrected Response Brief Under Tenth Circuit Rule 27.5(A)(2).  We grant Defendant's motion.

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge